**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| PAUL JOSPEH LOMBARDI,<br><br>                             Petitioner,<br>  vs.<br>M. KRAMER, Warden,<br><br>                             Respondent. | Civil No. 08cv1025-H (POR)<br><br>**PROPOSED FINDINGS OF FACT AND RECOMMENDATION THAT PETITION FOR WRIT OF HABEAS CORPUS BE DENIED**<br><br>**[Document No. 1]** |
|---|---|

## I. INTRODUCTION

On June 6, 2008, Petitioner Paul Joseph Lombardi ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). On June 11, 2008, his case was dismissed without prejudice for failure to pay the filing fee and with leave to file a motion for leave to proceed in forma pauperis. (Doc. 3). On June 16, 2008, Petitioner filed a motion for leave to proceed in forma pauperis, (Doc. 4) and the case was reopened on July 3, 2008. (Doc. 7).

This Court has reviewed the Petition (Doc. 1), Respondent's Answer (Doc. 13), Petitioner's Traverse (Doc. 20), and all supporting documents. After a thorough review, this Court finds Petitioner is not entitled to the relief requested and RECOMMENDS the Petitioner be

1 **DENIED**.

## II. PROCEDURAL BACKGROUND

On July 20, 2005, Petitioner was convicted of the attempted kidnap of and infliction of corporal injury on Lisa Pond, his spouse. (Lodgment 1 at 179-180.)  Petitioner admitted in a separate proceeding that he had been previously convicted of two crimes– a 1983 kidnaping and a 1995 aggravated assault– that qualified as serious felonies and strikes under California's Three Strikes Law. (Lodgment 2, Volume 4, at 628-629.)  Petitioner also admitted he had served four separate prior prison terms. (Id.)

On August 26, 2005, the trial court imposed an indeterminate aggregate sentence of thirty-seven years to life imprisonment, comprising: (1) the Three Strikes sentence of twenty-five years to life for attempted kidnaping; and (2) twelve years for the two serious-felony priors and for two prison priors. (Lodgment 2, Volume 5 at 641-42.)

Petitioner filed an appeal to the California Court of Appeal. (Lodgment 3.)  On January 15, 2007, the Court of Appeal affirmed the judgment. (Lodgment 6.)

Petitioner filed a petition for review in the California Supreme Court (Lodgment 7.)  On April 18, 2007, the petition for review was denied. (Lodgment 8.)

On June 6, 2008, Petitioner filed a Petition for Writ of Habeas Corpus. (Doc. 1.)  On September 8, 2008, Respondent filed an Answer. (Doc. 13.)  Petitioner filed his Traverse on November 26, 2008. (Doc. 20.)

## III. STATEMENT OF FACTS

The following facts are taken from the California Court of Appeal opinion in People v. Lombardi, No. SD ......(Cal. Ct. App. Date).  (Lodgement 6 at 2-4.)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1).

> At all pertinent times defendant and appellant Paul Joseph Lombardi and his wife Lisa Marie Pond were married. During 2002 Lombardi subjected Pond to physical abuse and threatened her with a firearm. As a result of this behavior in July 2003 Pond left Lombardi and the Northern California home she shared with him and moved to her sister's home in Poway.

2

On the morning of September 24, 2003, Pond was in her car at her sister's house about to drive to work. Lombardi suddenly appeared, opened her car door and attempted to pull her out of the car. He told her, "You walked out on me, bitch. You don't walk out on me. You're coming with me. You're coming with me."

Pond screamed at Lombardi: "No, I'm not going with you." In attempting to pull Pond out of the car Lombardi grabbed Pond's face, hair and arm. Pond fought back and at one point Lombardi grabbed her throat and tried to pull her out of the car. Pond was able to slide over to the passenger side of the car and honk the horn. In response Lombardi got in the driver's seat and attempted to start the car; however, in his haste he bent the key.

Both Pond and Lombardi got out of the car and Pond continued to scream. Pond's sister and brother-in-law emerged from their home along with other family members. Pond's sister told Lombardi to "get the fuck off [my] property." When Pond's relatives were present Lombardi became a different person and told them that he just wanted to talk to Pond.

Pond's demeanor did not change. According to her brother-in-law, he remembers seeing Pond terrified, "frozen stiff" and shaking. Another witness heard Pond screaming over and over again "Oh, my God. Help me." The witness called the police and handed the phone to Pond.

Following the attack, Pond had a cut on her eye and scratches and bruises. Lombardi is six foot, four-inches tall and weighs approximately 270 pounds; Pond is approximately five-foot, seven-inches tall and weighs approximately 130 pounds.

At trial the prosecution presented evidence from Lombardi's first wife and former girlfriend. Lombardi's first wife testified that shortly after she left Lombardi in December 1982 he found her at a gas station with her sister, pulled her out of her sister's car, forced her into his car, drove her to a motel and sexually assaulted her. Later, Lombardi was arrested while holding a knife to his wife's throat. Following this incident they reconciled. After their reconciliation Lombardi continued to push, shove, hit and threaten his first wife.

Lombardi's former girlfriend testified that during the entire course of a six-year relationship with Lombardi he physically abused her and threatened her with knives. After she left him and was living at a shelter Lombardi broke into the shelter and knocked a shelter employee to the floor.

## IV. STANDARD OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

3

28 U.S.C. § 2254(a). As amended, the AEDPA now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either §2254(d)(1) or §2254(d)(2). See <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000). The threshold question is whether the rule of law was clearly established at the time petitioner's state court conviction became final. <u>Id</u>. at 406. Clearly established federal law, as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." <u>Id</u>. at 412; <u>see also Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003). However, Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000). Only after the clearly established federal law is identified can the court determine whether the state court's application of that law "resulted in a decision that was contrary to, or involved an unreasonable application of" that clearly established federal law. <u>See Lockyer</u>, 538 U.S. at 71-72.

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams</u>, 529 U.S. at 405-06. "A state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it

4

to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. Under Williams, an application of federal law is unreasonable only if it is "objectively unreasonable." Id. at 409.

Further, a state court's decision results in a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).

A federal habeas corpus petition must allege a deprivation of one or more federal rights to present a cognizable claim pursuant to §2254. A state's interpretation of its laws or rules provides no basis for federal habeas corpus relief when no federal constitutional question arises. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (stating that federal habeas corpus relief does not lie for errors of state law, and federal courts may not reexamine state court determinations on state law issues). Habeas corpus proceedings under §2254 measure state convictions against federal constitutional requirements applicable to the states. A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas courts must respect state court's application of state law); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) (federal courts have no authority to review state's application of state law). Instead, federal courts may only intervene in state judicial proceedings to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to level of constitutional violation).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). A state court need not cite Supreme Court precedent when resolving a habeas corpus

1 claim. Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of
2 the state-court decision contradicts [Supreme Court precedent]", the state court decision will not
3 be "contrary to" clearly established federal law. Id. If a state court fails to provide a reasoning for
4 its decision, habeas review is not *de novo*, but requires an independent review of the record to
5 assess whether the state court erred in its application of controlling federal law. Delgado v. Lewis,
6 223 F.3d 976, 982 (9th Cir. 2000).

## V. DISCUSSION

The instant petition raises three grounds for relief: (1) the trial court violated Petitioner's right to due process by admitting evidence of prior acts of spousal abuse; (2) the trial court improperly instructed the jury on the crime of attempted kidnaping; and (3) the trial court erred in failing to instruct the jury on the crime of false imprisonment as a lesser included offense. (Doc. 1 at 6-14).

### A.     Ground One: Admission of Prior Acts of Spousal Abuse

Petitioner contends the trial court violated his right to due process by admitting evidence of prior acts of domestic violence against his first wife and former girlfriend. (Doc. 1 at 6.) Petitioner alleges the trial court improperly admitted the prior acts as propensity evidence and the evidence was remote in time and more prejudicial than probative. (Id.)

Respondent contends Petitioner's claim is procedurally barred because Petitioner failed to raise the claim on federal grounds in state court, and therefore the claim is unexhausted. (Doc. 13 at 12-13.) However, even if Petitioner's claim is not procedurally barred, Respondent contends the state court reasonably ruled the evidence was relevant and admissible. (Doc. 13 at 13-14.)

#### 1.     Procedural Bar: Failure to Exhaust

To satisfy exhaustion, a petitioner must provide the state courts one full opportunity to rule on his federal habeas claims before presenting those claims to the federal court. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (requiring petitioners to give state courts a "fair opportunity to act on their claims," that is, "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). In

6

order to provide the state courts this opportunity, the petitioner must fairly present each federal claim to the state's highest court. Therefore, to exhaust a habeas claim properly, a petitioner must present his claim to the California Supreme Court on (1) direct review (e.g., via a petition for review), or (2) collateral review (e.g., via a petition for a writ of habeas corpus). See Reiger v. Christensen, 789 F.2d 1425, 1427 (9th Cir. 1986).

A claim is fairly presented if petitioner allowed the California Supreme Court a fair opportunity to rule on the merits of every issue raised in his federal habeas petition. Granberry v. Greer, 481 U.S. 129, 133-34 (1987); see also Anderson v. Harless, 459 U.S. 4, 6 (1982) (stating that a claim is fairly presented if the petitioner has described the operative facts and the federal legal theory on which the claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim). A "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999). Also, to fairly present a federal claim to the state court the petitioner must alert the state court to the fact that he is asserting a federal claim. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), as amended upon denial of hearing en banc, 247 F.3d 904 (9th Cir. 2001) (holding that "a petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings specifically as federal claims"). The petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal constitution or statutes, or by citing to federal case law. Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005). Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court as well. Baldwin v. Reese, 541 U.S. 27, 32 (2004).

The Ninth Circuit has stated that "the Petitioner must refer to federal law in state court explicitly [but] exhaustion is satisfied once the Petitioner makes that explicit reference even if Petitioner relies predominantly on state law before the state courts." Insyxiengmay, 403 F.3d at 668. In Jones v. Smith, exhaustion was satisfied when "Petitioner's state court briefs explicitly

1  invoked his Sixth Amendment right.....Such invocation...was sufficient to keep the issue alive in
2  state courts, notwithstanding the fact that his state court briefs predominantly cited state court
3  cases." 231 F.3d 1227, 1231 (9th Cir. 2000).

4        Ground One of the Petition alleges a violation of due process due to the trial court's
5  admission of prior domestic violence acts which were remote in time, more prejudicial than
6  probative, and consumed an undue amount of time. (Doc. 1 at 6-9 .) Petitioner exhausted this
7  ground for relief when he presented it to the California Court of Appeal and California Supreme
8  Court on direct review. (Lodgment 6; Lodgment 7 at 15, 17.) Petitioner argues the erroneous
9  admission of prior domestic violence acts deprived him of his constitutional right to due process of
10 law and a fair trial (Id. at 17.) Specifically, Petitioner cites the Fourteenth Amendment, which
11 thereby apprised the state court of the federal nature of this ground for relief. See Duncan v.
12 Henry, 513 U.S. 364, 365-66 (1995). Therefore, Petitioner provided the state court a full
13 opportunity to rule on the first ground of relief before presenting it to this Court and accordingly,
14 Ground One is exhausted.

15       **2.**     **The Merits**

16       A state's interpretation of its laws or rules provides no basis for federal habeas corpus
17 relief when no federal constitutional question arises. Estelle v. McGuire, 502 U.S. 62, 68 (1991).
18 Nevertheless, the Ninth Circuit has indicated state laws can give rise to liberty interests cognizable
19 on federal habeas, and that a federal due process violation can arise from arbitrary rulings. See
20 Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993) ("[T]he failure of a state to abide by its
21 own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment
22 against arbitrary deprivation by a state, [and] Ninth Circuit precedent generally supports this
23 proposition."), citing Ballard v. Estelle, 937 F.2d 453 (9th Cir. 1991).

24       Specifically with regard to evidentiary rulings, "a state court's procedural or evidentiary
25 ruling is not subject to federal habeas review unless the ruling violates federal law, either by
26 infringing upon a specific federal constitutional or statutory provision or by depriving the
27 defendant of the fundamentally fair trial guaranteed by due process." Walters v. Maas, 45 F.3d
28

8

1355, 1357 (9th Cir. 1995). Therefore, a federal court may not disturb on due process grounds a state court's decision to admit uncharged bad acts evidence unless admission of that evidence "was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters, 45 F.3d at 1357; Jammal v. Van DeKamp, 926 F.2d 918, 919 (9th Cir. 1991).

California Evidence Code § 1101(a) generally prohibits introducing evidence a defendant committed acts, other than those charged, to prove he or she is a person of bad character or has a criminal disposition. Evidence Code § 1101(b), however, allows introduction of such evidence to prove issues such as identity, intent, motive, and lack of mistake or accident. People v. Kipp, 18 Cal. 4th 349, 369 (1998). Nevertheless, "evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." Id. Conversely, in the context of domestic violence, California Evidence Code § 1109 permits evidence of prior domestic violence to show propensity to commit other such acts. In all cases, uncharged misconduct is subject to exclusion if its probative value is substantially outweighed by a danger of undue prejudice, confusion of the issues, or of misleading the jury. Kipp, 18 Cal. at 371; California Evidence Code § 352.

In the last reasoned state court decision, the Court of Appeal held the trial court properly admitted evidence of Petitioner's prior acts of domestic violence given their highly probative value and lack of undue prejudice. (Lodgment 6 at 8.) The Court of Appeal determined because Petitioner was charged with domestic violence, Evidence Code § 1109(a) applied and the testimony offered by the prosecution was subject only to the requirements of Evidence Code § 352. Specifically, the Court of Appeal held:

> Here the principal question in dispute at trial was whether, in traveling to Poway, Lombardi planned to merely talk to Pond about reconciling or whether he planned to forcibly take her with him back to Northern California. On this critical issue–Lombardi's intentions in coming to Poway–the testimony of his first wife and his former girlfriend was highly probative because it demonstrated that in remarkably similar emotional settings Lombardi violently pursued a domestic partner who was attempting to leave him.
>
> . . .

9

>As the court stated in *People v Ewoldt* [(1994) 7 Cal. 4th 380], 403, "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual."
>
>Here each woman was at one point Lombardi's domestic partner. Each reported a history of physical abuse and threats. As a result of the abuse all three women attempted to leave Lombardi and all three reported that when they did so Lombardi came after them in an extremely violent manner. These similarities in the descriptions of Lombardi's behavior in similar settings made the uncharged acts very probative in determining whether Pond's version of events was more credible than Lombardi's.
>
>Notwithstanding their probative value, we must also consider whether the uncharged acts were unduly prejudicial. For instance, in *People v. Harris* (1998) 60 Cal.App.4th 727 the defendant was convicted in 1972 of first degree burglary with great bodily injury growing out of a violent rape he committed on a stranger. The People offered evidence of the 1972 conviction in a 1995 prosecution involving his sexual conduct with two mental patients he had befriended while working at a mental hospital. In finding that it was unduly prejudicial to use the earlier conviction in the later prosecution, the court noted the inflammatory nature of the prior act and its sharp difference with the charges the defendant was facing at trial. "The charged crimes involving a breach of trust and the 'taking advantage' of two emotionally and physically vulnerable women are of significantly different nature and quality than the violent and perverse attack on a stranger that was described to the jury." (*Id*. at p. 738.) Here there is no such disparity between the prior incidents and the charged crimes. All three incidents were of the same character and involved abuse, threats and violence against a domestic partner attempting to end a relationship with Lombardi. In light of these similarities there was little risk the jury would be unduly inflamed or confused by the prior incidents.
>
>We also note the incident Lombardi's wife described occurred more than 20 years before his attack on Pond. However, the "'staleness' of an offense is generally relevant if and only if the defendant has led a blameless life." (*People v. Harris, supra*, 60 Cal.App.4th at p. 739.) As the testimony of Lombardi's former wife, former girlfriend and Pond demonstrate, appellant has hardly led a blameless life; rather, he has continued a lifelong pattern of domestic abuse. In this factual context the length of time that has passed since Lombardi's assault on his former wife is not unduly prejudicial.
>
>In sum given the probative value of the prior incidents and the absence of undue prejudice the trial court acted well within its discretion in allowing testimony from Lombardi's former wife and former girlfriend. (Lodgment 6 at 6-8.)

In ruling the trial court properly admitted prior domestic violence acts, the Court of Appeal concluded the evidence was properly admitted pursuant to California law. (Lodgment 6 at 6-8.) Therefore, to the extent Petitioner seeks a federal court determination that admission of his prior domestic violence acts was improper pursuant to California law, his request fails under <u>Estelle v.</u>

McGuire.

Further, Petitioner is unable to demonstrate the appellate court arbitrarily ruled the trial court properly admitted prior domestic violence acts. The Court of Appeal engaged in a detailed evidentiary analysis. (Lodgment 6 at 6-8.) Initially, the Court of Appeal engaged in an Evidence Code § 1109(a) analysis and determined that admission of Petitioner's prior acts of domestic violence was only subject to the requirements of Section 352 and not Section 1101. (Id. at 5.) Subsequently, the Court of Appeal engaged in an Evidence Code § 352 analysis and held the trial court properly admitted evidence of Petitioner's prior acts of domestic violence because they were probative and not unduly prejudicial. (Id. at 8.) The Court of Appeal noted the similarities in the descriptions of Petitioner's behavior in the prior and current settings, and determined the prior acts were highly probative in (1) demonstrating Petitioner's violence towards domestic partners who attempted to leave him, and (2) determining whether Pond's version of events was more credible than Petitioner's version. (Id. at 6-7.) Further, the Court of Appeal held because of the similarities between the prior acts and the charged acts, "there was little risk the jury would be unduly inflamed or confused by the prior incidents." (Id. at 8.) Based thereon, Petitioner is unable to show that admission of the prior acts of domestic violence was "arbitrary or so prejudicial that it render[ed] the trial fundamentally unfair." Walters, 45 F.3d at 1357; Jammal v. Van DeKamp, 926 F.2d 918, 919 (9th Cir. 1991.) Thus, Petitioner has failed to demonstrate a due process violation. Fetterly, 997 F.2d at 1300. Accordingly, the Court RECOMMENDS the Petition be DENIED as to this ground for relief.

**B.     Ground Two: Instructional Error**

Petitioner contends the trial court improperly instructed the jury on the crime of attempted kidnaping. (Doc. 1 at 10-13.) At trial, the prosecutor offered a modified jury instruction for the crime of attempted kidnaping, combining the standard jury instructions for the substantive crime of kidnaping (CALJIC No. 9.50) and for the law relating to criminal attempts (CALJIC No. 6.00.)

11

1  (Lodgment 2 at 430-432.)[1]  During jury deliberations, the jurors passed a question to the trial court

2  asking for clarification regarding this instruction.  (Lodgment 1 at 106.)  The jurors inquired

3  whether the defendant need only attempt to carry the victim or whether the defendant actually had

4  to carry the victim.  (Id.)  The court responded to the jury's question with a supplemental

5  instruction, stating:

> For the purposes of this instruction every person who unlawfully and with physical force attempts to steal or take, or *attempts* to detain, or *attempts* to arrest another person and *attempts* to carry that person without her consent for a distance that is substantial in character, is guilty of the crime of attempted kidnaping in violation of Penal Code sections 664 and 207, subdivision (a).  (Id. at 107.)

9  Petitioner asserts the supplemental instruction did not properly set forth the elements of the

10 crime, thereby relieving the prosecution of its burden.  (Doc.1 at 10-13.)  First, Petitioner asserts

11 the supplemental instruction relieved the prosecution of proving he intended to move Pond a

12 substantial distance that was more than merely incidental to the associated crime of corporal

---

[1] The following is the modified jury instruction offered by the Prosecution at trial. The significant changes from the two separate standard instructions are highlighted:

> Defendant is accused in Count One of having committed the crime of ***attempted kidnaping***, a violation of sections 664 and 207, subdivision (a) of the Penal Code.
> An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and direct but ineffectual act done towards its commission.
> In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design.
> ***For the purposes of this section***, every person who unlawfully and with physical force ***attempts*** to steal or take, or hold, detain, or arrest another person and carry that person without her consent for a distance that is substantial in character, is guilty of the crime of kidnaping in violation of Penal Code sections 664 and 207, subdivision (a).
> A movement that is only for a slight or trivial distance is not substantial in character. In determining whether a distance that is more than slight or trivial is substantial in character, you should consider the totality of the circumstances attending the movement, including, but not limited to, the actual distance moved, whether the movement increased the risk of harm above that which existed prior to the movement, or decreased the likelihood of detection, or increased both the danger inherent in a victim's foreseeable attempt to escape and the attacker's enhanced opportunity to commit additional crimes.
> In order to prove this crime, each of the following elements must be proved:
>   1. The defendant ***attempted*** to unlawfully move the victim by the use of physical force;
>   2. The ***attempted movement*** of the victim was without her consent;
>   3. The ***attempted movement*** of the other person in distance was substantial in character.

injury. (Id. at 13.) Second, Petitioner contends the trial court failed to instruct the jury to consider whether the distance a victim was moved was incidental to the commission of any associated crime. (Id.)

Respondent contends the Court of Appeal's rejection of these claims was both consistent with federal law and based upon a reasonable determination of the facts. (Doc. 13 at 14.)

A defendant has a due process right to jury instructions that clearly and accurately set forth all the elements of the crime for which he is accused. Ho v. Carey, 332 F.3d 587, 592 (9th Cir. 2003.) However, "[n]ot every ambiguity, inconsistency or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). In Estelle v. McGuire, the Supreme Court examined the constitutionality of jury instructions and narrowed the inquiry of federal review to the question of "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process." 502 U.S. 62, 67 (1991) (quoting Cupp v. Naughten, 414 U.S. 141 (1973)). A single jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-47.

If there is a jury instruction error as to an element of the offense, it is subject to a harmless error analysis. Neder v. United States, 527 U.S. 1, 9-11 (1999); Evanchyk v. Stewart, 340 F.3d 933, 940 (2003). Under Brecht, "the standard for determining whether habeas relief must be granted is whether the... error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623, 637(1993). Neither party has the burden of proving or disproving that the error had the requisite influence on the jury's verdict. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995); Thompson v. Borg, 74 F.3d 1571, 1575 (1996). Instead, the reviewing judge examines the record and asks, "Do I, the judge, think that the error substantially influenced the jury's decision?" O'Neal, 513 U.S. at 436; Thompson, 74 F.3d at 1575. If the judge has "grave doubt" about whether the error had a substantial and injurious effect on the verdict, the error is not harmless. O'Neal, 513 U.S. at 436; Thompson, 74 F.3d at 1575.

The Court of Appeal concluded the jury instructions did not relieve the prosecution of its

13

burden of proving the essential elements of attempted kidnaping.  (Lodgment 6 at 10.)  The Court held: "Contrary to Lombardi's argument, these instructions expressly and appropriately advise the jury that in order to find Lombardi guilty of attempted kidnaping it was required to find that Lombardi had the specific intent to take Pond a substantial distance."  (Id.)  The Court of Appeal noted that as part of its instruction on attempted kidnaping, the trial court defined the substantial movement necessary for the crime of kidnaping using CALJIC 9.50, the standard instruction on kidnaping.  (Id.)  The Court concluded this definition "fully advised the jury of its need to find that Lombardi's intent was to move Pond a substantial distance."  (Id.)

Similarly, the Court of Appeal held the trial court's failure to instruct the jury to consider whether the distance a victim was moved was incidental to the commission of any associated crime was appropriate.  (Lodgment 6 at 11.)  Specifically, the Court held:

> In the context of this case, where Lombardi was charged with *attempted* kidnaping and there was no evidence Pond was moved any distance, this addition to the instruction would have been distracting and confusing.  The addition Lombardi suggests would have distracted the jury from consideration of Lombardi's overall intent in coming to Poway and required the jury to focus on the actual distance Pond was moved during the course of the assault Lombardi committed.  Unlike the cases and circumstances discussed in *People v. Martinez*, *supra*, 20 Cal.4th at page 237, where a victim's movement is incidental to the commission of another offense such as rape or robbery, here the other offense–the assault Pond endured– was itself only incidental to Lombardi's larger plan to take Pond back to Northern California.  In this context, where the defendant was only charged with attempted kidnaping and the associated crime is itself only an incident of a larger plan to kidnap the victim, instruction on the movement involved in the incidental crime would have been unnecessary and confusing.

(Lodgment 6 at 11.)

In ruling the supplemental instruction did not relieve the prosecution of proving the Petitioner intended to move Pond a substantial distance that was more than merely incidental to the associated crime of corporal injury, the Court of Appeal determined the instruction was appropriate under California law.  The Court of Appeal noted the trial court utilized CALJIC 9.50, the standard California jury instruction on kidnaping, to define "substantial distance" and thereby clarify its initial instruction on attempted kidnaping.  Based thereon, the Court concluded the jury

14

1  instruction "fully advised the jury of its need to find that Lombardi's intent was to move Pond a
2  substantial distance." (Lodgment 6 at 10).  Since "federal habeas corpus relief does not lie for
3  errors of state law," see Lewis v. Jeffers, 497 U.S. 764, 780 (1990), it is not the province of a
4  federal habeas court to re-examine state-court determinations on state-law questions.  A federal
5  court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the
6  United States.

7  Moreover, Petitioner fails to demonstrate the Court of Appeal's decision the jury
8  instructions were proper is contrary to or an unreasonable application of clearly established federal
9  law or an unreasonable determination of facts.  First, the Court of Appeal's conclusion the trial
10 court fully advised the jury of its need to find Petitioner had the specific intent to take the victim a
11 substantial distance was neither contrary to, nor an unreasonable application of, the clearly-
12 established Cupp standard, which inquires "whether the ailing instruction by itself so infected the
13 entire trial that the resulting conviction violate[d] due process." Cupp, 414 U.S. at 147.  Contrary
14 to Petitioner's contention, the modified jury instruction on attempted kidnaping–which included a
15 specific definition of substantial movement–expressly informed the jury of the essential element of
16 specific intent to move the victim a substantial distance for the crime of attempted kidnaping.
17 Thus, the modified jury instruction did not so infect the entire trial that Petitioner's resulting
18 conviction violated due process.  Estelle, 502 U.S. 62, 67 (1991) (quoting Cupp, 414 U.S. at 141.)

19 Similarly, the Court of Appeal's reasoning the additional jury instruction Petitioner
20 requested[2] was unnecessary and confusing was neither contrary to nor an unreasonable application
21 of, the clearly established Cupp standard.  In determining the additional instruction would have
22 distracted the jury from consideration of Petitioner's intent to kidnap by requiring the jury to focus
23 on the actual distance Pond was moved, the Court of Appeal's decision indicates the trial court's
24 omission of the instruction did not so infect the entire trial as to violate Petitioner's right to due
25 process.  Estelle, 502 U.S. at 72.  Accordingly, the Court RECOMMENDS the Petition be

---

[2] Petitioner requested an instruction which would have required the jury to consider whether the distance the victim was moved was incidental to the commission of any associated crime.

15

DENIED as to this ground for relief.

## C. Ground Three: Lesser-Offense Instruction

Petitioner contends the trial court erred by failing to sua sponte instruct the jury on false imprisonment, which is a lesser-included offense of attempted kidnaping. (Doc. 1 at 7.) Respondent contends Petitioner's claim is procedurally barred because Petitioner failed to raise the claim on federal grounds in state court, and therefore the claim is unexhausted. (Doc. 13 at 20.) However, even if Petitioner's claim is not procedurally barred, Respondent contends the claim fails because there is no federal right to instructions on lesser-included offenses in non-capital trials. (Doc. 13 at 20-21.)

### 1. Procedural Bar: Failure to Exhaust

As previously stated, to satisfy exhaustion, a petitioner must provide the state courts one full opportunity to rule on his federal habeas claims before presenting those claims to the federal court. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (requiring petitioners to give state courts a "fair opportunity to act on their claims," that is, "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). In order to provide the state courts this opportunity, the petitioner must fairly present each federal claim to the state's highest court.  Therefore, to exhaust a habeas claim properly, a petitioner must present his claim to the California Supreme Court on (1) direct review (e.g., via a petition for review), or (2) collateral review (e.g., via a petition for a writ of habeas corpus). See Reiger v. Christensen, 789 F.2d 1425, 1427 (9th Cir. 1986).

Ground Three of the Petition alleges a violation of due process due to the trial court's failure to sua sponte instruct the jury on the lesser-included offense of false imprisonment. (Doc. 1 at 13-14.) Petitioner did not exhaust this ground for relief in either the California Court of Appeal or the California Supreme Court on direct review. (Lodgment 3 at 40-44; Lodgment 7 at 23-25.) In both his appeal to the California Court of Appeal and his Petition for Review to the California Supreme Court, Petitioner relies solely on California case law to assert the trial court erred by failing to instruct the jury on the crimes of felony and misdemeanor false imprisonment. (Id.)

16

1  Petitioner did not alert the state court he was asserting a federal claim, and thereby failed to
2  apprise the state court of the federal nature of this ground for relief.  See Duncan, 513 U.S. at
3  365-66.  Therefore, Petitioner did not provide the state court a full opportunity to rule on the third
4  ground of relief before presenting it to this Court and accordingly, Ground Three is not exhausted.
5  However, even if the Court determines Ground Three is exhausted, Petitioner fails to demonstrate
6  the lack of a false imprisonment instruction violated his right to due process.

**2. The Merits**

Although a defendant in a capital case has a constitutional right pursuant to the Due Process Clause to a *sua sponte* instruction on all lesser-included offenses, see, e.g., Beck v. Alabama, 447 U.S. 625 (1980), the failure to give lesser-included offense instructions in non-capital cases presents no federal question.  Windham v. Merkle, 163 F.3d 1092 (9th Cir. 1998); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).  Specifically, the Ninth Circuit has held, "the failure of a state court to instruct on a lesser included offense in a non-capital case fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."  Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (quoting Bashor, 730 F.2d at 1240.)

On the other hand, a criminal defendant is entitled to have the jury instructed on his theory of defense, provided it is supported by law and has some foundation in evidence.  See Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002.)  A defendant is not constitutionally entitled to a defense instruction if the trial court reasonably determines the evidence does not support giving the instruction.  Solis v. Garcia, 219 F.3d 922, 929-30 (9th Cir. 2000.)

Nonetheless, Petitioner is entitled to federal habeas relief on an alleged instruction error if Petitioner demonstrates, "under the circumstances as a whole and given the evidence in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate federal due process."  Cupp, 414 U.S. at 147.  "The burden on the habeas petitioner is especially heavy where, as here, the alleged error involves the failure to give an instruction."  Clark v. Brown, 442 F.3d 708, 714 (9th Cir. 2006.)  The Supreme Court's prejudice standard for evaluating

17

trial error on collateral review, as set forth in Brecht v. Abrahamson, is also applicable. 507 U.S. 619 (1993).

Established California law provides that a trial court must instruct on lesser offenses if such offenses are supported by substantial evidence. People v. Breverman, 19 Cal.4th 142, 148-148 (1998.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." People v. Birks, 19 Cal.4th 108, 117 (1998.) "Substantial evidence" in this context is "evidence from which a jury composed of reasonable [persons] could ... conclude[]" that the lesser offense, but not the greater, was committed. People v. Flannel, 25 Cal.3d 668, 684 (1979) (quoting People v. Carr, 8 Cal.3d 287, 294 (1972.)

In the last reasoned state court decision, the Court of Appeal held the trial court was not required to instruct on the crime of false imprisonment. (Lodgment 6 at 11-13.) Specifically, the Court of Appeal held:

> A trial court is required "to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could...conclude []"' that the lesser offense, but not the greater, was committed." (*Ibid.*)
>
> Lombardi argues that if the jury determined he did not have the intent to take Pond from her sister's driveway, the jury still might have found that he had falsely imprisoned her. Admittedly, false imprisonment is a lesser included offense of all types of kidnaping. (*People v. Morrison* (1964) 228 Cal.App.2d 707, 713; *People v. Gibbs* (1970) 12 Cal.App.3d 526, 547.) However, even if we assume false imprisonment is also a lesser included offense of *attempted* kidnaping, there is no evidence in the record which would support a conviction of false imprisonment.
>
> "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) A person can be seized and confined for the purposes of false imprisonment either through fear or force. "[A] person can be seized and confined without any use of force, if he submits to confinement under the compulsion of fear and if that fear is not unreasonable under the circumstances." (*People v. Martinez* (1984) 140 Cal.App.3d 579, 599, disapproved on other grounds *People v. Hayes* (1990) 52 Cal.3d 577, 628, fn. 10.) However, "the use of fear to detain a person cannot establish a

18

> seizure or confinement if the person is at no time 'compelled to obey.' If threats and fear are ineffectual to cause confinement, and confinement is not effectuated by other means, then no seizure or confinement has occurred." (*Id*. at p. 600.) By the same token "the application of physical force upon a person is insufficient to establish his seizure or confinement for purposes of kidnaping and false imprisonment if the person successfully resists the force used...We can find no case of false imprisonment, whether criminal or tortious, where the victim's resistance to force was not sufficiently quelled to enable his assailant to possess him. Absent such possession, the application of force reasonably establishes not false imprisonment or kidnaping, but assault." (*Ibid*., fn. omitted.)
>
> Here there is nothing in the record which suggested that Lombardi ever had control over Pond sufficient to establish false imprisonment. According to her testimony he grabbed her and attempted to pull her from the car, but she resisted vigorously and was able to move to the passenger's side of the car and eventually get out of the car. According to Lombardi's testimony he never touched Pond. On this record the jury could not have reasonably concluded that Lombardi successfully detained Pond. Accordingly, the trial court was not required to instruct on the crime of false imprisonment.

(Lodgment 6 at 12-13.)

To the extent Petitioner seeks a federal court determination that he was entitled to a false imprisonment instruction pursuant to California law, his request fails under Estelle v. McGuire. Further, Petitioner fails to demonstrate the Court of Appeal's decision the evidence did not support an instruction on false imprisonment was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. The Court of Appeal applied the facts in the record to the elements of false imprisonment and determined the jury could not have reasonably concluded that Petitioner successfully detained Pond, an essential element of false imprisonment. Thus, the appellate court's decision Petitioner was not entitled to a false imprisonment instruction is reasonably consistent with federal law, which states a defendant is not constitutionally entitled to a defense instruction if the evidence does not support giving the instruction. See Solis v. Garcia, 219 F.3d at 929-30.

Moreover, Petitioner fails to demonstrate arbitrary determinations by the appellate court. In ruling Petitioner was not entitled to a false imprisonment instruction, the Court of Appeal applied the facts in the record to the elements of false imprisonment. The Court of Appeal noted that while Pond testified Petitioner grabbed her and touched her face, neck, hair and arm while

19

trying to pull her out of the car (Lodgment 2 at 74-76), the record indicates Petitioner never had sufficient control over Pond to establish false imprisonment. Specifically, the Court noted that Pond testified she resisted Petitioner and eventually got out of the car. (Id. at 118-120.) Based thereon, this Court finds the Court of Appeal reasonably determined the evidence did not support an instruction on false imprisonment and therefore, the failure to give the requested instruction did not render the trial so fundamentally unfair as to violate federal due process. Cupp, 414 U.S. at 147. Accordingly, the Court RECOMMENDS the Petition de DENIED as to this ground for relief.

## VI. CONCLUSION

After thorough review of the record in this matter and based on the foregoing analysis, this Court RECOMMENDS the Petition for Writ of Habeas Corpus be DENIED. This Proposed Findings of Fact and Recommendation for Disposition of the undersigned Magistrate Judge is submitted to the United States District Court assigned to this case, the Honorable Marilyn L. Huff, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (2007) and Local Rule 72.1(d).

**IT IS HEREBY ORDERED** that no later than **June 29, 2009**, any party may file and serve written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served no later than **ten days** after being served with the objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: May 29, 2009

_____
LOUISA S PORTER
United States Magistrate Judge

cc:   The Honorable Marilyn L. Huff
      all parties