# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL JOSEPH LOMBARDI,<br><br>　　　　　　　　Petitioner,<br>vs.<br><br>MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation,<br><br>　　　　　　　　Respondent. | CASE NO. 08-CV-1025 H (POR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254** |

On June 6, 2008, Petitioner Paul Joseph Lombardi ("Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On September 8, 2008, Respondent filed an answer. (Doc. No. 13.) On November 26, 2008, Petitioner filed a traverse. (Doc. No. 20.) The Magistrate Judge issued a Report and Recommendation, on May 29, 2009, to deny the petition. (Doc. No. 21.) On August 10, 2009, Petitioner filed his objections to the report. (Doc. No. 25.) After careful consideration, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge on the merits and **DENIES** the petition for writ of habeas corpus.

/ / /

/ / /

/ / /

# I. BACKGROUND

## A.     Procedural History

On July 20, 2005, Petitioner was convicted of the attempted kidnapping and infliction of corporal injury on Lisa Pond, his spouse. (Lodgment 1 at 179-80.) Petitioner admitted in a separate proceeding that he had been previously convicted of two crimes, a 1983 kidnapping and a 1995 aggravated assault, that qualified as serious felonies and strikes under California's Three Strikes Law. (Lodgment 2, vol. 4, at 628-29.) Petitioner also admitted he had served four separate prior prison terms. (Id.)

On August 26, 2005, the trial court imposed a sentence of thirty-seven years to life imprisonment, comprising: (1) the Three Strikes sentence of twenty-five years to life for attempted kidnapping; and (2) twelve years for the two serious-felony priors and for two prison priors. (Lodgment 2, vol. 5 at 641-42.)

Petitioner filed an appeal to the California Court of Appeal. (Lodgment 3.) On January 15, 2007, the Court of Appeal affirmed the judgment. (Lodgment 6.) Petitioner filed a petition for review in the California Supreme Court. (Lodgment 7.) On April 18, 2007, the petition for review was denied. (Lodgment 8.)

## B.     Statement of Facts

The following facts are taken from the California Court of Appeal opinion in People v. Lombardi, No. D047173, 2007 WL 97156, at *1 (Cal. Ct. App. 2007); (Lodgment 6 at 2-4.)

> At all pertinent times defendant and appellant Paul Joseph Lombardi and his wife Lisa Marie Pond were married. During 2002 Lombardi subjected Pond to physical abuse and threatened her with a firearm. As a result of this behavior in July 2003 Pond left Lombardi and the Northern California home she shared with him and moved to her sister's home in Poway.
>
> On the morning of September 24, 2003, Pond was in her car at her sister's house about to drive to work. Lombardi suddenly appeared, opened her car door and attempted to pull her out of the car. He told her, "You walked out on me, bitch. You don't walk out on me. You're coming with me. You're coming with me."
>
> Pond screamed at Lombardi: "No, I'm not going with you." In attempting to pull Pond out of the car Lombardi grabbed Pond's face, hair and arm. Pond fought back and at one point Lombardi grabbed her throat and tried to pull her out of the car. Pond was able to slide over to the passenger side of the car and honk the horn. In response Lombardi got in the driver's seat and attempted to start the car; however, in his haste he bent the key.
>
> Both Pond and Lombardi got out of the car and Pond continued to scream. Pond's sister and brother-in-law emerged from their home along with other family members. . . . When Pond's

relatives were present Lombardi became a different person and told them that he just wanted to talk to Pond.

Pond's demeanor did not change. According to her brother-in-law, he remembers seeing Pond terrified, "frozen stiff" and shaking. Another witness heard Pond screaming over and over again "Oh, my God. Help me." The witness called the police and handed the phone to Pond.

Following the attack, Pond had a cut on her eye and scratches and bruises.
Lombardi is six foot, four-inches tall and weighs approximately 270 pounds; Pond is approximately five-foot, seven-inches tall and weighs approximately 130 pounds.

At trial the prosecution presented evidence from Lombardi's first wife and former girlfriend. Lombardi's first wife testified that shortly after she left Lombardi in December 1982 he found her at a gas station with her sister, pulled her out of her sister's car, forced her into his car, drove her to a motel and sexually assaulted her. Later, Lombardi was arrested while holding a knife to his wife's throat. Following this incident they reconciled. After their reconciliation Lombardi continued to push, shove, hit and threaten his first wife.

Lombardi's former girlfriend testified that during the entire course of a six-year relationship with Lombardi he physically abused her and threatened her with knives. After she left him and was living at a shelter Lombardi broke into the shelter and knocked a shelter employee to the floor.

## II. DISCUSSION

### A.   Standards of Review

The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to any portion of the report, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." Id. Courts construe pro se pleadings liberally. See Maleng v. Cook, 490 U.S. 488, 493 (1989). The Court construes Petitioner's objections as encompassing the Report and Recommendation in its entirety and will review it de novo.

Title 28 U.S.C. § 2254(a) lists the scope of review for this petition:

"[A] district court shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) added the following limitation to state habeas claims:

An application for writ of habeas corpus on behalf a prisoner in State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Clearly established law as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta . . . ." Williams v. Taylor, 529 U.S. 362, 412 (2000). Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (citing 28 § U.S.C. 2254(e)(1)). When applying the AEDPA standard, a federal court relies on the "last reasoned decision by a state court." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

Petitioner raises three grounds for relief: (1) the trial court's admission of prior acts of spousal abuse violated Petitioner's right to due process; (2) the trial court improperly instructed the jury on the crime of attempted kidnapping; and (3) the trial court erred in failing to instruct sua sponte the jury on the crime of false imprisonment as a lesser included offense.

**B.     State Court's Admission of Prior Acts of Spousal Abuse**

Petitioner alleges the trial court violated his rights to due process by admitting evidence of prior acts of domestic violence against his ex-wife and former girlfriend. (Doc. No. 1 at 6.) Specifically, petitioner alleges the trial court improperly admitted the prior acts as propensity evidence and the evidence was too remote in time and more prejudicial than probative. (Id.)

A petition for habeas on behalf of a prisoner in state custody shall not be granted unless it appears that the applicant has exhausted all state remedies. 28 U.S.C. § 2254 (b)(1). To satisfy the exhaustion requirement, petitioner must provide the state courts one full opportunity to rule on his federal habeas claims before presenting those claims to federal court. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). A petitioner must fairly present a federal claim to the state's highest court. See Reiger v. Christensen, 789 F.2d 1425, 1427 (9th Cir. 1986). To fairly present a federal claim to a state court, the petitioner must alert the state

court to the fact that he is asserting a federal claim by specifying particular provisions of the federal constitution or statutes, or by citing to case law. Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005). Notwithstanding the failure of the petitioner to exhaust the remedies available in state court, the Court may deny the petition on the merits, but only if "it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

Here the Petitioner exhausted his remedies as to his claim of a violation of due process because of the trial court's admission of prior domestic violence. Petitioner exhausted this ground for relief when he presented it to the California Court of Appeal and Supreme Court on direct appeal. (Lodgment 6; Lodgment 7 at 15, 17.) Petitioner explicitly cited to the Fourteenth Amendment and accordingly apprised the state court of the federal nature of this ground for relief. (Lodgment 7 at 17.)

A state's interpretation of its laws does not provide a basis for federal habeas corpus relief, unless a federal constitutional question arises. Estelle v. McGuire, 502 U.S. 62, 68 (1991). State laws may give rise to liberty interests cognizable on federal habeas. See Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993) ("[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state.")

With regard to evidentiary rulings, "a state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). Therefore, "a federal court may not disturb on due process grounds a state court's decision to admit uncharged bad acts evidence unless admission of that evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters, 45 F.3d at 1357; Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). Furthermore, the Ninth Circuit noted that there is no Supreme Court precedent that holds the admission of propensity evidence when otherwise relevant is unconstitutional. Meija v. Garcia, 534 F.3d 1036, 1046

1  (9th Cir. 2009).

2  California Evidence Code § 1101(a) generally prohibits introducing character evidence, either by opinion, reputation, or evidence of specific incidents of conduct, to prove conduct on a specified occasion. Evidence Code § 1101(b), however, permits:

> the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, [etc.]. . .) other than his or her disposition to commit such an act.

California Evidence Code § 1109 is an express exception to § 1101: ". . . in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if it is not inadmissible pursuant to Section 352." Section 352 permits a California court, in its discretion, to exclude evidence if its probative value is substantially outweighed by the probability that the admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, or confusing the issues or of misleading the jury. Cal. Evid. Code § 352.

The California Court of Appeal held that the trial court properly admitted evidence of Petitioner's prior acts of domestic violence given their highly probative value and lack of undue prejudice. (Lodgment 6 at 8.) The appellate court applied Evidence Code § 1109(a) because the Petitioner was charged with domestic violence. (Lodgment 6 at 6-8.) The appellate court described the probative value of the prior testimony in its opinion:

> Here the principal question in dispute at trial was whether, in traveling to Poway, Lombardi planned to merely talk to Pond about reconciling or whether he planned to forcibly take her with him back to Northern California. On this critical issue—Lombardi's intention in coming to Poway—the testimony of his first wife and his former girlfriend was highly probative because it demonstrated that in remarkably similar emotional settings Lombardi violently pursued a domestic partner who was attempting to leave him. (Lodgment 6 at 6.)

In its reasoning, the appellate court noted that evidence of prior acts to prove intent do not need to be precisely similar and found the testimony of Petitioner's prior acts sufficiently similar. (Lodgment 6 at 7.) The appellate court also considered whether the uncharged acts were unduly prejudicial. (Id.) The appellate court reasoned: "All three incidents were of the same character and involved abuse, threats and violence against a domestic partner attempting

1  to end a relationship with Lombardi.  In light of these similarities there was little risk the jury
2  would be unduly inflamed or confused by the prior incidents." (Id.)  The Court of Appeal also
3  noted that even though the testimony of Petitioner's first wife described events 20 years ago,
4  the evidence of Petitioner's assault on his wife was not unduly prejudicial in light of his
5  continued life long pattern of domestic abuse. (Id.)  Therefore, the appellate court concluded
6  that the "given the probative value of the prior incidents and the absence of undue prejudice
7  the trial court acted well within its discretion in allowing testimony from Lombardi's former
8  wife and former girlfriend." (Lodgment 6 at 8.)

9  In ruling the trial court properly admitted the testimony regarding prior domestic
10 violence acts, the appellate court concluded the evidence was properly admitted pursuant to
11 California law.  Therefore, to the extent Petitioner seeks review that this evidentiary admission
12 was improper under California law, his request fails under Estelle v. McGuire.  See Estelle v.
13 McGuire, 502 U.S. 62 (1991).

14 Further, Petitioner is unable to demonstrate the appellate court arbitrarily ruled the trial
15 court properly admitted evidence of the prior domestic violence acts.  The appellate court set
16 forth its reasons for its decision in its detailed opinion concluding the trial court acted within
17 its discretion pursuant to California Evidence Code § 352.  Given the appellate court's well
18 reasoned opinion interpreting California law and applying it to the facts, Petitioner is unable
19 to show that admission of prior acts of domestic violence was "arbitrary or so prejudicial that
20 it render[ed] the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.
21 1995); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  Accordingly, the Court
22 DENIES the Petition as to Petitioner's evidentiary due process claim.

23 **C.    Instructional Error on Attempted Kidnapping**

24 Petitioner contends the trial court improperly instructed the jury on the crime of
25 attempted kidnapping.  This Court notes that a state court's interpretation of its laws or rules
26 provides no basis for federal habeas corpus relief when no federal constitutional questions
27 arises. Estelle v. McGuire, 502 U.S. 62, 68 (1991).  A defendant has a due process right to jury
28 instructions that accurately set forth all the elements of the crime for which he is accused. Ho

1 v. Carey, 332 F.3d 587, 592 (9th Cir. 2003).  Even if an instruction is defective, the scope of
2 federal review of a state jury instruction is "whether the ailing instruction . . . so infected the
3 entire trial that the resulting conviction violate[d] due process."  Estelle v. McGuire, 502 U.S.
4 at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Duckett v. Godinez, 67
5 F.3d. 734, 746 (9th Cir. 1995).

At trial, the prosecutor offered a modified jury instruction for the crime of attempted kidnapping, combining the standard jury instructions for the substantive crime of kidnapping (CALJIC No. 9.50) and for the law relating to criminal attempts (CALJIC No. 6.00) (Lodgment 2 at 430-32.)  During jury deliberations, the jury asked the trial court whether the defendant need only attempt to carry the victim or whether the defendant had to carry the victim for the jury to reach a guilty verdict.  (Lodgment 1 at 106.)  The court provided the following response:

> "For the purposes of this instruction every person who unlawfully and with physical force attempts to steal or take or attempts to detain, or attempts to arrest another person and attempts to carry that person without her consent for a distance that is substantial in character is guilty of the crime of attempted kidnapping. [citations omitted] This paragraph is to be considered in connection with the other paragraphs of this instruction." (Lodgment 1 at 107.)

Petitioner asserts the supplemental instruction did not properly set forth the elements of the crime, thereby relieving the prosecution of its burden of proving every element of the crime beyond a reasonable doubt.  (Doc. No. 1 at 10-13.)  First, Petitioner asserts the supplemental instruction relieved the prosecution of proving he intended to move the victim a substantial distance that was more than merely incidental to the associated crime of corporal injury.  (Id. at 13.)  Second, Petitioner contends the trial court failed to instruct the jury to consider whether the distance a victim was moved was incidental to the commission of any associated crime.  (Id.)

The California Court of Appeal concluded that the jury instructions did not relieve the prosecution of its burden of proving the essential elements of attempted kidnapping. (Lodgment 6 at 10.)  The appellate court noted that as part of its instruction on attempted kidnapping, the trial court defined the substantial movement necessary for the crime of kidnapping using CALJIC 9.5, the standard instruction fo kidnapping.  (Id.)

1    Similarly, the appellate court held the trial court's failure to instruct the jury to consider
2    whether the distance a victim was moved was incidental to the commission of any associated
3    crime was appropriate, because the instruction would had been unnecessary and confusing as
4    the evidence indicated that Ms. Pond was not moved any distance. (Lodgment 6 at 11.) The
5    state trial court used CALJIC 9.50 to define "substantial distance" and also clarified its
6    instruction on attempted kidnapping. Under the circumstances, the Court of Appeal concluded
7    the instruction "fully advised the jury of its need to find that [Petitioner's] intent was to move
8    Pond a substantial distance." (Lodgment 6 at 10.) The Court agrees.

9    To the extent Petitioner seeks review to re-examine the state court determination on
10   state law, this ground for relief fails under Estelle v. McGuire. See Estelle v. McGuire, 502
11   U.S. 62 (1991). Moreover, Petitioner fails to demonstrate the decision upholding the jury
12   instruction is contrary to, or involved an unreasonable application of clearly established federal
13   law or an unreasonable determination of facts. The Petitioner acknowledges, in his objections,
14   that the modified jury instruction listed the element of specific intent to kidnap. (Doc. No. 25
15   at 18.) Additionally, the supplemental instruction also did not relieve the prosecution of its
16   burden because the instruction explicitly made a reference to the original instruction that listed
17   the specific intent requirement. (Traverse at 18; Lodgment 1, Clerk's Transcript 107 ("This
18   paragraph is to be considered in connection with the other paragraphs of this instruction.").)
19   As a result, Petitioner has failed to show an instructional error that violated his due process
20   rights. Therefore, the Court DENIES the Petition on the claim of instructional error.

21   **D.    Lesser Included Offense Instruction**

22   Petitioner asserts that the trial court failed to provide, sua sponte, a jury instruction on
23   false imprisonment as a lesser-included offense of the crime of attempted kidnapping. (Doc.
24   No. 1 at 7.) The Court denies this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2) and
25   Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005), because Petitioner failed to present a
26   colorable federal claim.[1]

---

[1] The Court is satisfied that the Petitioner exhausted this claim in state court.

Although a defendant in a capital case has a constitutional right to a sua sponte instruction on all less-included offenses, see, e.g., Beck v. Alabama, 447 U.S. 625 (1980), in the Ninth Circuit, the failure to give lesser-included offense instructions in non-capital cases presents no federal question. Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) ("[T]he failure of a state court to instruct on a lesser included offense in a non-capital case fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). In contrast, California law provides that a trial court must "instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." People v. Breverman, 19 Cal.4th 142, 162 (1998). Notwithstanding Solis, Petitioner is entitled to federal habeas relief on an alleged instruction error if Petitioner shows that "under the circumstances as a whole and given the evidence of the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate federal due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). "The burden on habeas petitioner is especially heavy, where, as here, the alleged error involves the failure to give an instruction." Clark v. Brown, 442 F.3d 708, 714 (9th Cir. 2006).

In the last reasoned state court decision, the California Court of Appeal held that the trial court was not required to instruct sua sponte on the crime of false imprisonment. (Lodgment 6 at 11-13.) The appellate court, citing Breverman, 19 Cal.4th at 162, noted that under California law a trial court is required to instruct sua sponte on all theories of a lesser included offense which find substantial support in the evidence. (Id.) However, the appellate court then examined the record and found a lack of substantial support for the instruction of false imprisonment. (Lodgment 6 at 13.) According to the testimony of the victim, she was able to move away from the Petitioner and get outside of the car. (Id.) According to Petitioner's own testimony, he never touched Pond. (Id.) The court concluded that given this record, Petitioner did not have sufficient control over Pond to establish false imprisonment. (Id.)

////

The state court's decision was not contrary to, or an unreasonable application of clearly established federal law as interpreted by the Supreme Court. Under <u>Solis</u>, there is no federal habeas claim for a state court failing to instruct, sua sponte, on lesser included offenses in non-capital cases such as the Petitioner's. <u>Solis v. Garcia</u>, 219 F.3d 922 (9th Cir. 2000) Furthermore, Petitioner fails to show any arbitrary determinations by the appellate court because the record did not support a sua sponte instruction on false imprisonment. Therefore, this Court DENIES the petition on Petitioner's due process claim concerning the lesser included offense of false imprisonment.

### III. CONCLUSION

Based on the foregoing, the Court **ADOPTS** the report and recommendation on the merits of Petitioner's claims and **DENIES** the petition for a writ of habeas corpus. The Court also denies a Certificate of Appealability.

IT IS SO ORDERED.

Dated: October 5, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.